**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

RICHARD SCHOONMAKER and MARY
SCHOONMAKER, *individually and as Husband
and Wife*,

                             Plaintiffs,

                                                         1:18-CV-1352
       v.                                                 (DJS)

STARFIRE REALTY HOLDINGS, LLC, and
STARFIRE SYSTEMS, INC.,

                             Defendants.

**APPEARANCES:**                                   **OF COUNSEL:**

CONWAY & KIRBY, PLLC                DANA M. WOLIN, ESQ.
Attorney for Plaintiffs
413 Kenwood Avenue
Delmar, New York 12054

GOLDBERG SEGALLA LLP              WILLIAM H. BAAKI, ESQ.
Attorney for Defendants
8 Southwoods Blvd., Suite 300
Albany, New York 12211

**DANIEL J. STEWART**
**United States Magistrate Judge**

## MEMORANDUM-DECISION and ORDER

### I. BACKGROUND

On January 16, 2018, at 3:30 in the afternoon, Plaintiff Richard Schoonmaker was working part-time for Federal Express, and was making a pickup at Starfire Systems, located at 8 Sarnowski Drive, Glenville, New York. Dkt. No. 2, Compl. at ¶ 7. After Plaintiff parked his FedEx Sprinter van near the door, he traveled through freshly fallen

snow to pick up a package inside the shop.  Dkt. No. 24-4, Richard Schoonmaker Dep. at p. 75.  He followed the same route upon his return, and after walking around the front of his van, he slipped and fell on his back.  *Id*. at p. 81.  The slip and fall was recorded by an exterior video camera located at the facility, and that video has been presented to the Court in support of the presently pending Motion.  *See* Dkt. No. 24-13, Exhibit A.  According to the Plaintiff, underneath the snow where he fell was a patch of hidden ice.  Richard Schoonmaker Dep. at p. 83.  As a result of the fall, Plaintiff alleges that he was severely injured and was required to undergo full left knee replacement surgery in July 2018.  *Id*. at p. 106.

This action was initially commenced in the Rensselaer County Supreme Court, but was removed to Federal Court on November 16, 2018, based upon principles of diversity.  Dkt. No. 1.  On September 13, 2019 the parties consented to proceed before the undersigned in accordance with 28 U.S.C. § 636(c) and FED. R. CIV. P. 73.  Dkt. No. 22.  Defendants have now filed a Motion for Summary Judgment.  Dkt. No. 24.  In sum, Defendants argue that because the Plaintiff fell while a snowstorm was still in progress, no claim of negligence can be stated against the Defendants.  Dkt. No. 24-14, Defs.' Mem. of Law at pp. 1-7.  Alternatively, Defendants argue that summary judgment is appropriate due to the lack of any admissible evidence that Defendants were on notice of any hazardous condition which allegedly caused Plaintiff's fall.  *Id.* at pp. 7-9.

Plaintiffs oppose the Motion.  Dkt. Nos. 27, 28, 29, & 30.  Plaintiffs generally dispute that a snowstorm was occurring at the time of the fall.  *See* Dkt. No. 28, Pls.' Rule 7.1 Response at ¶¶ 10 & 28.  Even if the storm-in-progress defense had some application,

Plaintiffs assert that it was the pre-existing underlying ice condition, not caused by the recent storm, that was the instrumentality that resulted in the fall and injury. Dkt. No. 27, Pls.' Mem. of Law at pp. 2-6.  Further, Plaintiffs note that their expert meteorological evidence establishes that the ice in question must have existed for three days *prior* to the Plaintiff's fall, thereby giving sufficient notice to the Defendants that they had a common law duty to take remedial action, which they negligently failed to do. *Id*. at pp. 6-8.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary

- 3 -

judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

## III. DISCUSSION

Where jurisdiction is based upon diversity, the court applies the substantive law of the state where the negligence is alleged to have occurred. *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994). To establish a prima facie case of negligence under New York law, "a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006). A property owner has a duty to maintain its property in a reasonably safe condition in view of all the circumstances. *Basso v. Miller*, 40 N.Y.2d 233, 241 (1976). In the case at bar, therefore, Plaintiffs must establish that Defendants "created the condition which caused the accident, or that the defendant had actual or constructive notice of the condition which caused the fall." *Casiano v. Target Stores*, 2009 WL 3246836, at *3 (E.D.N.Y. 2009) (citation omitted).

For constructive notice, "a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Gordon v. Am. Museum of Natural History*, 67 N.Y.2d 836, 837-38 (1986).

Defendants maintain that they were under no duty to the Plaintiff because the incident occurred while a snowstorm was in progress. Under New York law, a property owner has no duty to remove snow and ice during the course of a storm, and generally must be given a reasonable amount of time to remedy the dangerous condition after the storm has ended. *Hascup v. Hascup,* 969 F. Supp. 851, 853 (N.D.N.Y. 1997); *Amazon v. British Am. Dev. Corp.*, 216 A.D.2d 702, 704 (3d Dep't 1995). The purpose of the doctrine is "to relieve the worker(s) of any obligation to shovel snow while continuing precipitation or high winds are simply recovering the walkways as fast as they are clean, thus rendering the effort fruitless." *Powell v. MLG Hillside Assocs., LP*, 290 A.D.2d 345 (1st Dep't 2002).

A defendant asserting the storm-in-progress doctrine at the summary judgment stage must show "prima facie entitlement to judgment based on that defense and, if that burden is met, the opponent of the motion must come forward with competent, admissible evidence, establishing the existence of a triable issue of fact." *Sanders v. Wal-Mart Stores, Inc*., 9 A.D.3d 595 (3d Dep't 2004). In the present case, Defendants have met their burden. The video provided to the Court establishes that the fall occurred during a snow event, and in fact that it was still lightly snowing at the time of the fall. A store employee confirms that it was lightly snowing at the time of the incident. Dkt. No. 24-6,

Studt Dep. at pp. 48-49.  Defendants have also submitted expert analysis of a licensed meteorologist, who concluded that there was a winter weather advisory in effect for January 16, 2018, that the total accumulation was 1.6 inches that day and, based upon examination of radar, there was light snow falling at the time the Plaintiff reports that he fell.  Dkt. Nos. 24-9, Lombardo Aff'd, and 24-11, Report of Forensic Weather Consultants, LLC at pp. 17-18.  Indeed, Plaintiffs' *own* expert indicates that it was lightly snowing at the time of the incident, and it had been snowing since 1:00 a.m. that day.  Dkt. No. 30, Wasula Aff'd at ¶ 22.  Expert evidence such as this, based upon meteorological records, has been held by courts to be "especially persuasive."  *Powell v. MLG Hillside Assocs., LP*, 290 A.D.2d at 345.

Mr. Schoonmaker's claim that he could not see snow in the video shown to him at his deposition is insufficient to defeat this defense for several reasons.  First, the testimony of the Plaintiff is belied by the video evidence presented on the Motion.  That video shows the FedEx van with its wipers on, and snow lightly falling at the time Plaintiff arrived at the facility.  Second, Mr. Schoonmaker testified at his deposition that he could not recall the weather conditions on the day in question.  Richard Schoonmaker Dep. at p. 58.  Third, Plaintiff's assertion is contradicted by Plaintiff's own expert.  Fourth, even if there had been a lull in the storm at the time Plaintiff arrived at Starfire Systems, the expert proof establishes that the storm continued for a period of time thereafter.  Wasula Aff'd at ¶¶ 19-20.  As noted in *Rabinowitz v. Marcovecchio*, "[a] lull in the storm does not impose a duty to remove the accumulation of snow or ice before the storm ceases in its entirety." 119 A.D.3d 762 (2d Dep't 2014).

Plaintiffs' alternative position, that this doctrine does not apply in circumstances where there is only an inch and a half of snow, is simply an incorrect statement of law. "Indeed, the storm-in-progress doctrine is not limited to situations where blizzard conditions exist, but also applies to other instances, like here, of less severe, but still inclement weather." *Sobieraj v. United States*, 2020 WL 2115671, at *6 (W.D.N.Y. Mar. 12, 2020), *report and recommendation adopted*, 2020 WL 2113459 (W.D.N.Y. May 4, 2020) (citing *Alvardo v. Wegmans Food Market, Inc*., 134 A.D.3d 1440, 1441 (4th Dep't 2015) (affirming trial court's decision to grant summary judgment in case involving slip and fall on snow and ice because "evidence that it was only snowing lightly at the time of the accident does not render the storm in progress doctrine inapplicable."); *Zima v. North Colonie Cent. Sch. Dist*., 225 A.D.2d 993 (3d Dep't 1996) ("[A]lthough it is clear that no major winter storm occurred at the time of the accident, the undisputed proof sufficiently establishes the existence of an ongoing hazardous weather condition that defendant was under no obligation to correct until a reasonable time after it had ended.")).

Plaintiffs make one final argument in opposition to the Motion: that the ice that caused the fall was not the product of the January 16, 2018 snowstorm, but in fact was caused by a thaw/freeze weather event that occurred three days earlier. In support of this claim, Plaintiff relies upon his testimony, the photographs taken by him immediately after the fall, the meteorological records, and the expert conclusions of Alicia Wasula, PhD. Pls.' Mem. of Law at pp. 6-8. According to Meteorologist Wasula, after a sustained cold spell in the area, temperatures began to moderate starting on January 9, 2018. Wasula Aff'd at ¶¶ 6-22. High temperatures on January 9 and 10 were 37° and 38°, respectively,

- 7 -

and increased to 51° and 63° on January 11 and 12. *Id*. Artic air then arrived in the area, and the temperature then fell from a high of 39° on January 13, 2018, to a low of 8°. *Id.* According to the expert, temperatures remained below freezing from that time through the time of the incident. *Id.* The temperature on January 16, 2018 was between 26° and 28°. Plaintiffs' expert then offered the following opinion:

> Although light snow was ongoing at the time of the incident, there would have been no melting and refreezing of the snow, and thus any ice present at the incident site would have originated on the morning of January 13, when the sharp drop in temperature rapidly froze wet areas solid.

*Id.* at ¶ 25.

The expert then added:

> Given that there was no precipitation or snowfall on January 14 or 15, any ice which formed as a result of the freeze on January 13 would have remained present and visible (uncovered by new snow) during the days prior to the fall.

*Id.* at ¶ 26.

In response, Defendants argue that the Affidavit of Plaintiffs' Expert regarding preexisting ice is rank speculation and without evidentiary value. Dkt. No. 31, Defs.' Reply at p. 3. Defendants note that the condition Plaintiff alleges as dangerous was snow covering ice, and there has been no showing that the ice in question was pre-existing. *Id.* Rather, if in fact there was ice at the time, it could have been caused by snow compressed under someone's boots; water from an external source; or the heat of a vehicle that had parked in the area. *Id.* Further, they argue that it was only the combination of the snow covering the ice that constituted the dangerous condition, so that this case squarely falls within the storm-in-progress doctrine. *Id.*

In the Court's view, the Plaintiffs' opposition papers have raised a sufficient factual issue regarding the existence of an underlying icy condition that they claim caused Plaintiff's fall that predated the January 16 storm by several days, therefore establishing the potential for constructive notice of a dangerous condition. *Olejniczak v. E.I. du Pont de Nemours & Co.*, 79 F. Supp. 2d 209, 218 (W.D.N.Y. 1999) (noting that to prove constructive notice, "plaintiff must demonstrate that the icy condition was visible and apparent, and had existed for a sufficient period of time to allow defendant's personnel to discover and remedy it.").

Mr. Schoonmaker directly testified regarding the underlying ice that caused his fall and has provided photographs taken immediately after the event which, while not perfect, can be construed as consistent with this claim. Also consistent with the assertion of ice under the snow is the testimony of the Defendants' employee, Gary Studt, that it was slippery under the snow where Mr. Schoonmaker had fallen. Studt Dep. at p. 38. The Affidavit of Defendants' CEO David Devor submitted in support of the Motion, while noting that numerous employees would have gone in and out of the side entrance in the days prior to the accident and none of them reported any difficulties, did not set forth any personal observations from Mr. Devor even though he was on site on January 16, 2018, and was notified of the incident, nor does it specifically dispute the existence of a pre-existing ice condition. *See* Dkt. No. 24-13, Devor Aff'd. While Defendants had a contract with a third party, Simon's Rock, to provide snow plowing services, Defendants would have to specifically call them to come and salt any icy areas, and no evidence was presented on the Motion that any work (either plowing or salting) by

Simon's Rock was performed between the dates of January 13 and 16. Dkt. No. 24-8, Della Ratta Dep. at pp. 27, 34. The side entrance area was covered by a mounted video camera which was operated by the Defendants, but the only video provided to the Court was of the time of the accident, and therefore does not establish the condition of the lot in the days prior.

In support of their case, and as noted above, Plaintiffs have provided expert testimony which concludes that any ice in question could only have been formed on January 13 when there was a significant thawing in temperature in the area, and which was then followed by an extended period of below-freezing temperatures that lasted until after the event. Defendants' expert, for his part, does not refute this conclusion in his own report nor offer any explanation of any ice condition or how it may have been formed, as his opinion was offered simply on the issue of whether or not there was a storm in progress when the Plaintiff fell. Defendants' counsel, in his Reply Memorandum of Law, makes several logical arguments as to an alternative cause of the ice forming during the storm, Defs.' Reply at p. 6, but ultimately this becomes a question of fact for the jury to determine.

In light of the foregoing, triable issues of fact remain. *Hall v. United States*, 2020 WL 759045, at *4 (N.D.N.Y. Feb. 14, 2020) ("Plaintiff has raised an issue of fact as to whether her fall was caused by a slippery condition the result of earlier weather conditions - based on [a meteorologist's] opinion that ice formed in the parking lot between 9:00 a.m. and 12:00 p.m. due to earlier rain and snow melt and the temperature falling below freezing during that time. Accordingly, Defendant is not entitled to summary judgment

- 10 -

on the storm in progress defense."); *Occhino v. Citigroup Inc.*, 2005 WL 2076588, at *5 (E.D.N.Y. Aug. 26, 2005) ("While a general 'freeze/thaw' theory may be speculative, the existence of specific expert testimony and meteorological evidence as to when the icy condition formed can create a triable issue of fact as to whether a defendant had constructive notice.") (collecting cases); *Raimond v. United States*, 2004 WL 2108364, at *3 (W.D.N.Y. Sept. 21, 2004) ("even assuming arguendo that there was a storm in progress, there is a genuine issue of material fact whether [plaintiff] slipped on ice that had formed before the storm."); *see also Sobieraj v. United States*, 2020 WL 2115671 at *7 (rejecting claim, made during oral argument, that there was a preexisting dangerous ice condition, where the undisputed evidence in the record was that Defendant cleared and salted the sidewalk and entranceway that morning, prior to plaintiff's accident, and therefore plaintiff's argument was pure conjecture.).  Accordingly, Defendants' Motion for Summary Judgement must be denied, and the matter shall proceed to trial.

### IV.  CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED**, that Defendants' Motion for Summary Judgment (Dkt. No. 24) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties to this action.

Dated: September 14, 2020
      Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge